**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF FLORIDA**
**GAINESVILLE DIVISION**

**KENNETH D. SCIPPIO,**

      **Plaintiff,**

**vs.**                               **Case No. 1:08cv141-MP/WCS**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

      **Defendant.**

_____/

## REPORT AND RECOMMENDATION

      This is a social security case referred to me for a report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D. LOC. R. 72.2(D). It is recommended that the decision of the Commissioner be affirmed.

**Procedural status of the case**

      This case was initially filed in this court on July 2, 2008, after an adverse decision by the Commissioner. Doc. 1. Without objection, on September 23, 2008, the case was remanded on Defendant's motion because the audio tape of the administrative hearing was inaudible. Docs. 10 and 11. Another hearing was held, resulting in

another adverse decision.  The record after return to this court has been filed only as an electronic document.  Doc. 22.

Plaintiff, Kenneth D. Scippio, applied for disability insurance benefits.  His last date of insured status for disability benefits is December 31, 2009, and he alleges disability commencing on April 1, 2004.

Plaintiff was born on September 24, 1974, was 34 years old at the time of the second administrative hearing (on February 27, 2009).  Doc. 22-3, pp. 107-108,[1] R. 473-474.  He has a 12th grade education, and has past relevant work as a laboratory assistant and as a housekeeping.

Plaintiff alleges disability due to chronic diarrhea, abdominal pain, and malabsorption syndrome.  The Administrative Law Judge found that Plaintiff has the residual functional capacity to perform a wide range of light work.  Relying upon testimony from a vocational expert and the "grids,"[2] he found that there are jobs which Plaintiff can do within his residual functional capacity.  He concluded, therefore, that Plaintiff is not disabled.

**Legal standards guiding judicial review**

This court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a

---

[1] The first reference is to the numbering and pagination of the record as an electronic document.

[2] Appendix 2 to Subpart P of Part 404 – Medical-Vocational Guidelines, found at: http://www.ssa.gov/OP_Home/cfr20/404/404-ap11.htm

scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002).  "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n. 8 (11th Cir. 2004) (citations omitted).  The court must give "substantial deference to the Commissioner's decision." Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005).

"A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ.  A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).  "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' " Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Both the "impairment" and the "inability" must be expected to last not less than 12 months. Barnhart v. Walton, 535 U.S. 212, 122 S.Ct. 1265, 1272, 152 L.Ed.2d 330 (2002).

The Commissioner analyzes a claim in five steps. 20 C.F.R. § 404.1520(a)-(f):

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits. A positive finding at step three results in approval of the application for benefits. At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work. If the claimant carries this burden, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy. Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050,

1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must prove

that he or she cannot perform the work suggested by the Commissioner.  Hale v.

Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

**Evidence from the administrative hearing**

Plaintiff testified that he had to stop working in 2004 due to chronic diarrhea and

overwhelming fatigue.  Doc. 22-3, p. 111, R. 477.  He said he was experiencing

diarrhea every day after meals, sometimes before meals, and in the middle of the night.

*Id.*  He said he was going to the bathroom three and four times a day.  *Id.*, p. 112, R.

478.  Plaintiff said he did not intend to wear an adult diaper.  *Id.*  He said that he would

be in the bathroom for 10 to 15 minutes each time.  *Id.*, p. 113, R. 479.  Plaintiff said

that the time he spent in the bathroom caused a problem with his supervisor, and he

was required to obtain a doctor's note to show that he was sick.  *Id.*  Plaintiff said that

on April 1, 2004, he took leave under the Family Medical Leave Act, was out of work for

three months, was not able to return to work, and was terminated.  *Id.*  He then received

disability insurance benefits.  *Id.*, p. 116, R. 482.  Plaintiff also said that  two or three

times a day during work, he became light headed, weak, and had to take a break.  *Id.*,

pp. 117-118, R. 483-484.  Plaintiff said that the medications prescribed for his diarrhea

had not worked.  *Id.*, p. 114, R. 480.

The vocational expert was asked to assume a hypothetical worker who had to

take three or four unscheduled bathroom breaks during an 8 hour work day.  *Id.*, p. 129,

R. 495.  Assuming no durational period for these breaks, the expert said that this would

not prevent Plaintiff form doing his past work as a housekeeper.  *Id.*  He was then asked

to assume that the three or four unscheduled bathroom breaks would each take up to 15 minutes. *Id.* The expert said that that would significantly cut into an 8 hour day, was a "significant erosion," and would "compromise the ability to work." *Id.*, pp. 129-130, R. 495-496.

**Legal analysis**

**Whether the ALJ erred in his credibility determination**

Plaintiff argues that the ALJ erred in his finding that Plaintiff's testimony lacked credibility. Doc. 24, p. 6. Pain and other symptoms reasonably attributed to a medically determinable impairment are relevant evidence for determining residual functional capacity. Social Security Ruling 96-8p, p. 4. Pain and other symptoms may affect either exertional or non-exertional capacity, or both. *Id.*, p. 6.

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true. *See Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002). The reasons articulated for disregarding the claimant's subjective pain testimony must be based upon substantial evidence. Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991). It is not necessary that the ALJ expressly identify this circuit's pain

standard if his findings "leave no doubt as to the appropriate result" under the law.

Landry v. Heckler, 782 F.2d 1551, 1553-1554 (11th Cir. 1986).

The ALJ here determined that Plaintiff's testimony as to the severity of his symptoms of diarrhea was not fully credible. Doc. 22-3, pp. 52-53, R. 418-419. He reasoned that the findings of the state agency reviewing physicians, Drs. Donald W. Morford and Jenifer Peckoo-Williams, should be assigned "significant weight." *Id.*, p. 53, R. 419. He noted that while Plaintiff has insulin dependent diabetes mellitus, he is not compliant with dietary restrictions or with his medications. *Id.* He also observed that Plaintiff had testified that the episodes of diarrhea occur "only a few times daily," and he does not wear adult diapers. *Id.* He said that the treatment for this condition had been "essentially conservative." *Id.* He also observed that when Plaintiff is compliant with "prescribed medications and treatment regimens, the evidence establishes that treatment has controlled his symptoms." *Id.* The ALJ found that Plaintiff had "significant gaps" in treatment, and had cancelled or failed to appear for appointments "on a number of occasions." *Id.* He said that Plaintiff had been "repeatedly advised to attend educational classes for managing his diabetes; but he did not follow up." *Id.* From this the ALJ concluded that "the claimant's symptoms may not have been as serious as alleged." *Id.*

These findings are supported by the following substantial evidence in the record. On December 9, 2004, Plaintiff was seen at Shands at University of Florida Clinic, where most of his treatment occurred in recent years. Doc. 22-2, p. 165, R. 351. It was noted that his diabetes had been poorly controlled. *Id.* It was currently under control on

that date, but the physician said that "he is very likely out of control based on his fastings and his lack of attention to this." *Id.*, p. 166, R. 352. A referral to We Care for diabetic teaching was planned. *Id.*

On December 29, 2004, Plaintiff was seen at the Clinic. Doc. 22-2, p. 163, R. 349. He had lost his glucometer and had not been checking his blood sugars. *Id.* The diagnosis was Type I diabetes "uncontrolled." *Id.* It was planned that he would be sent to We Care "for diabetic teaching." *Id.*

On January 13, 2005, Plaintiff's diabetes appeared to be well-controlled. Doc. 22-2, p. 161, R. 347. On February 24, 2005, Plaintiff was seen again at Shands Clinic. *Id.*, p. 159, R. 345. A stool sample was needed to check for fecal fat. *Id.* It was noted that the Clinic would check for malabsorption syndrome, but that his diarrhea "could be from a pure autonomic neuropathy." *Id.*

On March 24, 2005, Plaintiff was seen again at Shands Clinic. Doc. 22-2, p. 158, R. 344. He reported he was experiencing "3 to 4 stools, very loose, a day." *Id.* The stool study indicated malabsorption syndrome due to fat in the stools. *Id.* It was noted that Plaintiff had not been checking his blood sugars "appropriately," and "has been checking no fastings." *Id.* Viokase was prescribed for the diarrhea, and it was noted that his blood sugars needed to be followed "more closely if he does begin to absorb more." *Id.*

On April 7, 2005, his blood sugar level was "fairly well-controlled now, [and] it is very likely he was noncompliant in the past. . . ." Doc. 22-2, p. 157, R. 343.

On August 2, 2005, it was noted that on July 19, 2005, Plaintiff had run out of insulin and his blood sugars were in the high 200s, but after his clinic appointment that date, he received insulin, and his blood sugars on August 2nd were around 125. Doc. 22-2, p. 154, R. 340. It was concluded that his diabetes was under "moderate to good control on medications." *Id.* On August 5, 2005, Plaintiff's diabetes was "under good control." *Id.*, p. 152, R. 338.

On November 15, 2005, it was noted that Plaintiff failed to keep his appointments at We Care and needed another referral. Doc. 22-2, p. 150, R. 336. On February 6, 2006, it was noted that Plaintiff did not keep his appointment at the GI clinic because he was found not to qualify at We Care. *Id.*, p. 149, R. 335. Other arrangements for referral to a GI clinic were planned. *Id.*

On April 10, 2006, it was noted that Plaintiff's diabetes was "clearly not controlled." Doc. 22-2, p. 145, R. 331. An increase of insulin was ordered. *Id.*, p. 146, R. 332.

On April 24, 2006, he was seen again at the Shands Clinic. Doc. 22-2, p. 143, R. 329. He had not checked his blood sugars because his strips had expired. *Id.* The resulted in the inability to "do any other further management in respect to his diabetes." *Id.* His diabetes was not controlled. *Id.*, p. 144, R. 330.

On July 18, 2006, Plaintiff's diabetes was uncontrolled. Doc. 22-3, p. 35, R. 401. On August 2, 2006, Plaintiff returned to Shands Clinic. *Id.*, p. 37, R. 403. It was noted that Plaintiff had not been compliant with taking prescribed medications. *Id.* The

physician wrote: "For a month, he did not take his NovoLog."[3] *Id.* It was also noted: "He finally agrees to go and have his Diabetes Education, and he also started exercising since I last talked to him." *Id.* The physician, Stefania C. Bray, M.D., said that she was "sure that diabetes has a big component" as a cause of his diarrhea, thought she said that his diarrhea was "multi-factorial." *Id.*, p. 38, R. 404.

In summary, there is substantial evidence in the record to support the ALJ's credibility finding. There is substantial evidence that Plaintiff did not comply with treatment, and that when he did, his diabetes came under control. There is substantial evidence that he would not attend diabetes education classes. There is substantial evidence that uncontrolled diabetes may be a partial cause of Plaintiff's diarrhea. And there is substantial evidence that the frequency of Plaintiff's diarrhea should not interfere with his ability to work. Since the ALJ's credibility finding is supported by substantial evidence, the first issue presented by Plaintiff is not persuasive.

### Whether the ALJ erroneously failed to fully develop the record

Plaintiff contends that the ALJ failed in his duty to fairly develop the record. Doc. 24, p. 8. Plaintiff argues that the ALJ "failed to inquire as to how Plaintiff's chronic diarrhea and malabsorption syndrome [affect] Plaintiff's daily activities." *Id.*, p. 9.

"Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits . . . ." Sims v. Apfel, 530 U.S. 103, 110-111, 120 S.Ct. 2080, 2085, 147 L.Ed.2d 80 (2000), citing Richardson v. Perales, 402 U.S. 389, 400-401, 91 S.Ct.

---

[3] NovoLog is a form of injection insulin. PHYSICIANS' DESK REFERENCE (2004), p. 2355.

1420, 28 L.Ed.2d 842 (1971). "Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a *basic* obligation to develop a full and fair record." <u>Graham v. Apfel</u>, 129 F.3d 1420, 1422 (11th Cir. 1997) (emphasis added), *citing*, <u>Cowart v. Schweiker</u>, 662 F.2d 731, 735 (11th Cir. 1981). This basic duty exists whether or not the claimant is represented. <u>Brown v. Shalala</u>, 44 F.3d 931, 934 (11th Cir. 1995) (citation omitted).

The basic duty to develop a fair record becomes a special or heightened duty when a claimant has not waived a right to counsel. "A Social Security claimant has a statutory right, which may be waived, to be represented by counsel at a hearing before an ALJ." <u>Brown v. Shalala</u>, 44 F.3d at 934 (11th Cir. 1995), citing <u>Smith v. Schweiker</u>, 677 F.2d 826 (11th Cir. 1982) and 42 U.S.C. § 406. Where the right to representation has not been waived,

> the hearing examiner's obligation to develop a full and fair record rises to a special duty. This *special duty* requires, essentially, a record which shows that the claimant was not prejudiced by lack of counsel. In carrying out this duty, the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts."

<u>Brown v. Shalala</u>, 44 F.3d at 934-935, quoting <u>Smith v. Schweiker</u>, 677 F.2d at 829 (citations omitted, emphasis added).[4] It is not necessary "to determine that the presence of counsel would necessarily have resulted in any specific benefits in the handling of the case before the ALJ." *Id.* "Nevertheless, there must be a showing of prejudice before we will find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development

---

[4] *See also*, <u>Ellison v. Barnhart</u>, 355 F.3d 1272, 1276-1277 (11th Cir. 2003).

of the record." *Id.* The court should be guided by "whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.' " *Id.* ; <u>Graham v. Apfel</u>,129 F.3d at 1423. Additional evidence is not necessary if the record contains sufficient evidence to make a decision. <u>Wilson v. Apfel</u>, 179 F.3d 1276, 1278 (11th Cir. 1999).

Plaintiff had a representative at his administrative hearing, though it is not known if his representative was a lawyer. It is assumed she was not. Doc. 22-3, p. 105, R. 471. But whether the duty to develop the record was ordinary or special, Plaintiff has not shown any evidentiary gaps in this record. The record contained sufficient evidence for the ALJ to make a reasoned decision. This second point, therefore, is without merit.

**Conclusion**

Considering the record as a whole, the findings of the Administrative Law Judge were based upon substantial evidence in the record and correctly followed the law. The decision of the Commissioner to deny Plaintiff's application for benefits should be affirmed.

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner to deny Plaintiff's application for Social Security benefits be **AFFIRMED**.

**IN CHAMBERS** at Tallahassee, Florida, on November 4, 2009.


s/     William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


Case No. 1:08cv141-MP/WCS

## <u>NOTICE TO THE PARTIES</u>

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**